In re Jeanine M. BOYD, f/k/a Jeanine Boyd Robinson, Debtor.

Jeanine M. BOYD, f/k/a Jeanine Boyd Robinson, Petitioner,

v.

Bruce G. ROBINSON, Respondent.

In re Barbara A. WICKS.

Barbara A. WICKS, Plaintiff-Appellee,

v.

Dorance W. WICKS, Defendant-Appellant.

Civ. Nos. 4–83–165, 4–83–125.

United States District Court, D. Minnesota, Fourth Division.

June 23, 1983.

Robert J. Lawton, St. Paul, Minn., for Barbara A. Wicks.

Hart Kuller, St. Paul, Minn., for Dorance W. Wicks.

Michael P. Wagner, St. Paul, Minn., for Jeanine M. Boyd.

Mary Catherine Lauhead, Minneapolis, Minn., for Minnesota State Bar Ass'n.

Phillip D. Nelson, White Bear Lake, Minn., for Bruce G. Robinson.

Randy S. Victor, St. Paul, Minn., for William E. Haugh & Collins, Buckley.

Linda A. Krohn, St. Paul, Minn., for William D. Harper & Harper & Wirth.

Martin L. Swaden, Minneapolis, Minn., for Family Law Committee Minnesota Trial Lawyers Ass'n.

## ORDER

MILES W. LORD, Chief Judge.

Before this court are two appeals from the Federal Bankruptcy Court, *Jeanine Boyd v. Bruce G. Robinson,* 26 B.R. 772, and *Barbara A. Wicks v. Dorance W. Wicks,* 26 B.R. 769. These two cases were decided on the same day, share the same controlling issue and basic fact pattern but carry with them different results. For these reasons the issues presented by these cases will be discussed in this single order.

In *Boyd* the divorce of the parties was tried in Ramsey County District Court and the judgment and decree was entered on June 30, 1981. The debtor appealed this decree to the Minnesota Supreme Court where it was affirmed in a summary decision entered March 1, 1982. In the divorce decree the district court determined that the homestead which was originally owned by the debtor before the marriage was partially marital property and that the husband had a 7,000 dollar equity interest in the homestead. The district court then distributed the property giving the homestead to Boyd, subject to Robinson's 7,000 dollar lien. On January 20, 1982 the debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code claiming her entire homestead exempt pursuant to Minnesota Statutes §§ 510.01 and 510.02. She subsequently filed adversary proceedings on February 26, 1982, seeking among other things, avoidance of appellant's lien against the homestead pursuant to the provisions of 11 U.S.C. § 522(f)(1). Appellant filed an answer in the form of a general denial on or about March 31, 1982. Debtor and appellant both moved the bankruptcy court for summary judgment on December 21, 1982.

In *Wicks* the parties worked out a mutually agreeable settlement agreement regarding, among other things, the disposition of the homestead. The homestead was purchased by the parties as joint tenants in 1975. The parties agreed that Wicks would give up his possessory rights in the property to appellant and would in turn receive a nonpossessory interest in the homestead equal to half of the agreed upon equity. Within four days after Wicks and appellant signed the stipulation agreement, Wicks caused a dissolution proceeding to be commenced in Dakota County District Court. By the consent of Wicks and appellant, no trial was held. The court entered a judgment and decree on April 14, 1980, adopting all the terms of the stipulation agreement with the exception of a provision regarding a child custody matter, which had previously been changed by mutual agreement of appellant and Wicks. After the failure of appellant to pay the lien once it had become due and the commencement of a foreclosure action by Wicks, appellant filed a petition commencing this bankruptcy case seeking to avoid Wicks' lien. Wicks commenced an adversary proceeding in this case and filed a motion for a partial summary judgment on September 13, 1982.

On December 21, 1982 Judge Owens granted debtor Boyd's motion for summary judgment finding that the lien was avoidable as a judicial lien under section 522(f)(1) of the bankruptcy code. On the same day Judge Owens granted creditor Wicks' motion for summary judgment finding that his

lien was not avoidable as a judicial lien under section 522(f)(1).

The first issue before this court is whether the lien imposed by the State District Court in the Boyd/Robinson marriage dissolution was properly avoided as a judicial lien under section 522(f)(1) by the Federal Bankruptcy Court. Section 522(f)(1) reads as follows:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is a judicial lien.

In the legislative history regarding section 101(28) which defines lien the following is stated, "In general the concept of lien is divided into three kinds of liens: judicial liens, security interest, and statutory liens. Those three categories are mutually exclusive and are exhaustive except for certain common law liens." A judicial lien is defined by 11 U.S.C. § 101(27) to be a: "lien obtained by judgment, levy sequestration or other legal or equitable process or proceeding."

Judge Owens made the following observations and conclusions about the Robinson lien:

Robinson obtained his lien interest in the property by the amended judgment and decree of the Ramsey County District Court. The judgment was obtained by and as a result of the legal proceeding to dissolve the marriage of the debtor and Robinson.

Robinson's lien has all the attributes of a judicial lien. The lien accrues interest at the rate judgments of the District Courts of the State of Minnesota bear interest. The lien was perfected by the entry of judgment.

■■■ Debtor argues that Judge Owen's decision should be upheld because the lien imposed by the family court has all the characteristics of a judicial lien in that there was no interest of the appellant in Boyd's homestead prior to the imposition of the lien in the judgment and decree and that the lien which gave him an interest was created solely by the judicial imposition of that lien in proceedings to dissolve the marriage. If this court accepted the debtor's characterization of the lien, it would have little problem in affirming the avoidance of the lien. For a judicial lien is an interest which encumbers a specific piece of property granted to a judgment creditor who was previously free to attach any property of the debtor's to satisfy his interest but who did not have an interest in a specific piece of property before the occurrence of some judicial action. A careful look at the family court proceedings, the applicable statutory law and the intent of the family court proves that the lien in question does not, contrary to the debtor's assertion, correspond with this common definition of a judicial lien.

Appellant's interest in the homestead does not arise solely from the judgment and decree but instead arises by force of Minnesota Stat. 518.58 which specifically conditions distribution of marital assets upon a dissolution of the marriage relationship of the parties. Pursuant to section 518.58 and in accordance with the applicable state law, the family court determined by looking at all the evidence that the appellant had an equitable interest of 7,000 dollars in the Boyd homestead. This determination was subsequently approved by the Minnesota Supreme Court. The family court imposed the lien on the homestead in order to secure the interest which it had determined existed. This particular method was obviously chosen in order to insure the most equitable and desirable result. Given that there were insufficient cash or other marital assets to satisfy appellant's share upon entry of the judgment and decree, the court would have had to force an immediate sale of the homestead in order to satisfy the appellant's interest upon the issuance of the judgment and decree. Instead, the court imposed a lien on the homestead which was specifically designed in order to defer the satisfaction of appellant's interest in the subject property until the emancipation of Brian

Boyd Hansel, the youngest child born to debtor's first marriage.

The lien created by the family court is not a judicial lien as contemplated by section 101(27) of the bankruptcy code. The interest in this case is not one which was created by the imposition of the lien, but one which was created by state statutory and court made law and was effectuated by the imposition of the lien. There is a distinction.

The decision by Judge Owens that this lien was avoidable under 11 U.S.C. 522(f)(1) fails in yet another respect. In order for an interest to be avoidable under section 522(f)(1), it must impair an exemption to which the debtor would have been entitled. *Cowan v. Cowan,* 12 B.R. 613 (Bkrtcy.W.D.Okl.1981). By granting this lien against the homestead to appellant and awarding the remainder of the value of the homestead to debtor, the family court clearly intended each party to have separate interests in the homestead. Debtor's interest does not include that portion of the value of the homestead represented by the unpaid principal of the first mortgage thereon, nor does it include that portion of the value of the homestead represented by appellant's lien. This is substantiated by the clear language of the judgment and decree:

5: Property Settlement to Petitioner (Debtor) . . .

5.1 Homestead. The homestead of the parties . . . subject to the mortgage thereon, which she shall be responsible for and pay and further subject to a lien in favor of the respondent (ex-husband) as set forth herein below... In the event that petitioner fails to pay said lien as set for [sic] hereinabove and respondent shall be entitled to attorney's fees and costs from compel payment of said lien, respondent shall be entitled to attorney's fees and costs from the petitioner same as are allowed by statute as in cases of mortgages which are foreclosed by action.

The award of appellant's lien interest in the homestead is stated in express mort-

gage language. Appellant is not a judgment creditor who can attach any property he may find to satisfy his interest; rather, his satisfaction, as any mortgagee's satisfaction, must derive from the specific asset identified in the mortgage language.

Because appellant in fact, owns an undivided $7,000.00 interest in debtor's homestead, as determined by the family court and affirmed by the Minnesota Supreme Court, his interest cannot impair the debtor's ownership of the property. The bankruptcy courts have made a distinction between the interest created by judgment liens and interests created by mortgages. *In Re Burkholder* (Bkrtcy.Pa.) 11 B.R. 346 (1981) circumscribed the rights of a judicial lienor: "A judicial lienor has not 'rights in specific property.' Unlike a mortgagee, he does not look to a specific piece of property from which to satisfy his debt, nor does he have an interest in specific property."

Appellant stands in the shoes of a mortgagee. His money interest has been judicially determined, not judicially imposed, which determination constitutes an equitable mortgage.

The lien in question does not in fact have any of the characteristics of a judicial lien. The interest was created by family state law, the lien itself secures this preexisting interest and functions the same as a security interest. To label this a judicial lien merely because it is a lien which was imposed in a judicial proceeding puts form over substance. A perfect illustration of this fact is found when the result in *Boyd* is compared to the result in *Wicks.* In *Wicks* as in *Boyd,* the lien was created pursuant to a marriage dissolution proceeding.

The lien was imposed in order to distribute the equities which were shared in the homestead, and the method of a lien was chosen to avoid a forced sale of the property. The distinction in the two cases and that stressed by Judge Owens is that in the *Wicks'* case the distribution of property was agreed to by stipulation by the parties, unlike in *Boyd,* where it was determined by the family court. In both instances, how-

ever, the lien was imposed by the filing of the judgment and decree. To avoid the lien in the *Boyd* case, and not in the *Wicks,* ignores the function and purpose of the marriage dissolution proceedings and creates an artificial and unfair distinction between the two manners of distributing property.

There is even further evidence beyond the foregoing to reverse the bankruptcy court's decision in *Robinson* allowing the avoidance of Robinson's lien. The laws of marriage and divorce, and the property divisions incident thereto, belong uniquely to the several states. Federal courts have traditionally abstained when faced with family law questions and when a bankruptcy judge is presented with a bankruptcy that is primarily caused by the liability imposed by a divorce, the bankruptcy judge should give serious consideration to abstaining. Given this unique character of family law, for the bankruptcy court to impose such a formalistic approach in its decision while ignoring the purpose of the marriage dissolution proceedings and intent of the family court is to come dangerously close to imposing its own judgment in place of the family courts. The propriety of the judgment and decree of the trial court, and the affirmation of that judgment by the Minnesota Supreme Court, is not a proper subject for review of or preemption by the federal bankruptcy court. There is no preemptive federal question here which can remove jurisdiction over the disposition of marital assets from the state trial and Supreme Courts or grant to a federal court the power to supercede, relitigate or alter a marital distribution which has been reduced to judgment and

affirmed by the state trial and Supreme Courts. Further, there is clear intent evidenced by the bankruptcy code that rights created in the parties to a marriage dissolution are beyond the purview of the bankruptcy act. Section 523(a)(5) excerpts from discharge a debt owed to a spouse, former spouse, or child of the debtor, in connection with a separation agreement, divorce decree, or property settlement agreement, for alimony, maintenance for, or support of such spouse or child but not to the extent that the debt is assigned to another entity. Surely there is no evidence of intent in the bankruptcy code that a lien created by a family court pursuant to a property distribution should be avoided as a judicial lien under section 522(f). This is true particularly in this situation where, as a result, the family courts are considerably limited in the methods available to them to perform their dictated functions and where complete confusion has been created in the field of family law.[1]

Given the foregoing discussion this court finds: The Robinson lien in the Boyd bankruptcy is not avoidable as a judicial lien under 11 U.S.C. § 522(f)(1) and it is ordered that the decision of the bankruptcy court to avoid Robinson's lien is reversed. It is further ordered that these proceedings are remanded to the bankruptcy court to proceed according to this order.

The Wicks' lien was correctly determined to not be avoidable under 11 U.S.C. § 522(f)(1) and it is, therefore, ordered that the decision of the bankruptcy court is affirmed.

---

1. The Minnesota Legislature has recently acted to alleviate the problems created in this area.

Section 287.01, subdivision 3, has been amended to read:

Mortgage means any instruments, including a decree of marriage dissolution or an instrument made pursuant to it, creating or evidencing a lien of any kind on such property, given or taken as security for a debt, not withstanding such debt may also be secured in part by a lien upon personality.

Section 287.03 has been amended to read: No instrument, other than a decree of marriage dissolution or an instrument made pur-

suant to it, relating to real estate shall be valid as security for any debt, unless the fact that it is so intended and the initial amount of the debt are expressed in it.

Section 287.04 has been amended to read: A decree of marriage dissolution or an instrument made pursuant to it or a mortgage given to correct a misdescription of the mortgaged property, or to include additional security for the same indebtedness on which a mortgage registration tax has been paid, shall not be subject to the tax imposed by this chapter except as provided in section 287.05, subdivision 2(b).