ROSS, Circuit Judge,
dissenting.
I respectfully dissent. The majority concludes that the judicial lien in question is not avoidable under section 522(f)(1) because it did not attach to any “interest of the debtor in property,” but rather “protects a pre-existing interest of Robinson’s in the homestead that was created under Minnesota law prior to the marriage dissolution.” Ante at 1114. The latter quoted statement on which the majority bases its opinion is entirely correct. It is also irrelevant.
The state court’s marriage dissolution order gave the house outright to Boyd, subject to Robinson’s lien. Prior to the order, Robinson had a pre-existing interest in the house. But that is all it was — pre-existing. Robinson’s prior interest in the house was dissolved. In its place, the court gave him a debt of $7,000 enforceable by a lien on the house. What had been a property interest became simply collateral for a debt. Since the house was simultaneously vested solely in Boyd, the lien must have attached to her interest in the house, for no one else possessed any ownership interest in the house.
Apparently the majority is relying on the following statement by the district court: “Debtor’s interest does not include * * * that portion of the value of the homestead represented by appellant’s lien.” In re Boyd, 31 B.R. 591, 595 (D.Minn.1983). But, under Minnesota law, a lien is merely a “charge upon land for the payment of a debt or duty. * * * A lien is [in] no sense an estate or interest in the land.” Application of Gau, 230 Minn. 235, 41 N.W.2d 444, 448 (1950) (citations omitted). Hence, Robinson’s lien does not deprive Boyd of a complete ownership interest in the entirety of the house.[1]
The district court found that the lien was also not avoidable under section 522(f)(1) because it was not a “judicial lien.” Instead, the district court found that the lien was an equitable mortgage or a security interest. The majority does not rely on this holding in affirming the district court, for good reason.
First, the federal definition of “judicial lien” must control the determination of whether Robinson’s interest is a judicial lien for bankruptcy purposes, since the Code provides a definition. See McKenzie v. Irving Trust Co., 323 U.S. 365, 369-70, 65 S.Ct. 405, 407-08, 89 L.Ed. 305 (1945); Hulm v. First Federal Savings & Loan Assoc. of Bismarck, Inc., 738 F.2d 323 (8th Cir.1984). If state law were allowed to vary what would otherwise be a judicial lien by merely calling the interest an “equitable mortgage,” havoc would result.
Section 101(28) of the Bankruptcy Code defines a lien as a “charge against or interest in property to secure payment of a debt or performance of an obligation.” 11 U.S.C. § 101(28) (1982). Section 101(27) defines a judicial lien as a “lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.” 11 U.S.C. § 101(27) (1982). Here, the state court granted Robinson a lien against the house to secure performance of Boyd’s obligation to pay him $7,000. Hence, Robinson’s lien fits precisely within the Bankruptcy Code’s definition of a “judicial lien.”
The district court based its conclusion that Robinson’s lien was not a judicial lien *1116 on three arguments. First, the court argued- that the lien was not “obtained by judgment,” as required by section 101(27) of the Bankruptcy Code, since Robinson had an interest in the house prior to the court order. However, until the order, he did not have the $7,000 interest or the lien on the house. Thus, the lien was clearly “obtained by judgment.”
Second, the court reasoned that the lien was in the nature of a security interest or a mortgage. However, the lien was clearly not a security interest, within the Bankruptcy Code definitions, since a security interest is defined as a “lien created by an agreement.” 11 U.S.C. § 101(38) (1982). Nor was the lien a mortgage, since it was created by the court, rather than by contract or conveyance.
Finally, the court argued that the lien could not be a judicial lien because it only attached to a specific piece of property, rather than to all of the debtor’s property. However, this fact is irrelevant, since the Bankruptcy Code does not require that a judicial lien attach to all of the debtor’s property.
The majority and district court decisions are an attempt to avoid the application of bankruptcy avoidance to property settlements. In the past, the federal courts have been hesitant to treat property settlements like other debts. See, e.g., In re Waller, 494 F.2d 447 (6th Cir.1974). Congress’ adoption of section 523(a)(5)(B) of the Bankruptcy Code to halt the practice of permitting state law to define what constitutes alimony or support (nondischargeable debts) and property settlements (discharge-able debts) reflects the congressional intent that property settlements should be treated the same as other debts in bankruptcy. While I agree that permitting avoidance of this lien is a harsh result, I cannot in conscience join the majority. This type of decision is for Congress. Once Congress has decided, its judgment should be respected. The majority opinion does not do so. Therefore, I must dissent.

. It is clear that the state court gave Robinson a lien rather than an ownership interest in the house. The state court described Robinson’s interest as a lien. If Boyd had paid Robinson the $7,000, the debt would have been satisfied and the lien discharged. Boyd had the right to exclusive title and possession of the house. Further, Robinson could not share in any increase in value of the house. The problem created in this case could have been avoided if Robinson had been given an ownership interest (for example, an undivided one-third interest subject to a term of "x" years) rather than a lien, but such was not the case.